552 So.2d 1344 (1989)
Joseph BULOT and Rene Jacomine
v.
William JUSTICE and Raoul "Skip" Galan, Clerk of Court, 24th Judicial District Court Parish of Jefferson, XYZ Insurance Company, ABC Bank, QRS Insurance Company.
No. 89-C-313.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 1989.
Writ Denied February 2, 1990.
*1345 W. Monroe Stephenson, New Orleans, for plaintiffs-appellants Joseph Bulot and Rene Jacomine.
Kenneth Fonte, Golden & Fonte, A Professional Law Corp., Metairie, Don C. Gardner, Harahan, for respondent John Gegenheimer, Clerk of Court, 24th Judicial Dist. Court.
Before CHEHARDY, KLIEBERT and GAUDIN, JJ.
KLIEBERT, Judge.
This matter comes to us on a writ of review granted on May 17, 1989, docket No. 89-C-313, and the timely appeal of a trial court judgment rendered after a hearing on a preliminary injunction brought by Jon Gegenheimer, the present Clerk of Court, Parish of Jefferson. The injunction restrained and enjoined Joseph Bulot and Rene Jacomine from seizing property or funds of the Clerk to satisfy final judgments obtained by them against the Office of the Clerk of Court for the Parish of Jefferson, based on the acts of prior clerks and/or their employees. See Bulot v. Justice, 524 So.2d 269 (5th Cir.1988). Thus, squarely raised for consideration is the issueAre the Clerk's properties and funds "public" within the intendment of Article 12, Section 10 of the 1974 Constitution so as to exclude them from seizure.
A writ panel of this Court had previously held the Clerk's properties and funds were "public" within the meaning of the Constitution and as such exempt from seizure. See Bulot v. Justice, 529 So.2d 166 (5th Cir.1988). Subsequently, the Supreme Court denied a writ application on this Court's ruling but reserved the relator's right to "raise the issue after trial of a preliminary injunction." See Supreme Court Writ Docket No. 88-CC-2049. In his reasons for judgment the trial judge gave substantially the same reasons for holding the funds exempt from seizure as had been previously stated by a panel of this Court. For the reasons hereinafter stated, we adhere to our original ruling.
In deciding whether Article 12, Section *1346 10 of the 1974 State Constitution[1] is applicable we must first determine whether the office of the Clerk of Court, 24th Judicial District, qualifies as one of the entities defined therein. The trial judge, in reaching the conclusion the cited constitutional provision was applicable, said in his reasons for judgment that the Clerk of Court is a separate "local governmental subdivision" under LSA-R.S. 42:1441.2[2] and, therefore, its funds are not subject to seizure. We agree.
LSA-R.S. 42:1441.2(A) clearly provides the clerk of a district court is a public officer "named in and designated as parish officials by Article VI, Sections 5(G)[3] and 7(B)[4] of the Constitution ..." LSA-R.S. 42:1441.2(B) provides the office of the clerk of a district court is deemed a separate "local governmental subdivision" for the purpose of securing general liability insurance coverage. For other purposes, the clerk of a district court is still part of the political subdivision, i.e., the Parish of Jefferson in this instance.
Further, under LSA-R.S. 42:1441.3(A)[5] the master of an individual who is an elected or appointed public officer (for example, *1347 the Clerk of a District Court) for the purpose of Civil Code Article 2320[6] is the particular political subdivision of which such individual is a public officer. Section 42:1441.3(C) provides that "A public officer may be the officer of a parish ... or other political subdivision without being ... under the direct control of the particular body which exercises the legislative functions of such parish ..."
Given the foregoing, we hold the clerk of a district court is a public officer of the particular political subdivision wherein his office lies (here the Parish of Jefferson) and, being part of the political subdivision, the property of and funds generated by his office are "public" and exempt from seizure under Article 12, Section 10 of the Louisiana Constitution of 1974.
The judgment appealed from is the May 8, 1989 judgment granting a preliminary injunction against seizure. Thus, the only issue before us at this time is the propriety of the trial court's finding that the property of the Clerk of the 24th Judicial District Court is public property and hence exempt from seizure under the Louisiana Constitution. More particularly, the plaintiffs did not raise the possible applicability of LSA-R.S. 13:758(B) in the trial court. For that reason, plus the fact that it is not pertinent in reaching a conclusion as to whether the trial judge properly granted the preliminary injunction, we decline to consider plaintiffs' alternative contention in the appeal; i.e., the Clerk is required to pay the judgment from his salary fund at this time.
We therefore affirm the trial court's judgment granting the preliminary injunction and remand the case for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] Article 12, Section 10 of the 1974 Constitution provides as follows:

"(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered."
[2] LSA-R.S. 1441.2 provides as follows:

"A. Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant shall not extend or apply to and shall not impose liability upon the state for the offenses and quasi-offenses of any of those public officers named in and designated as parish officials by Article VI, Sections 5(G) and 7(B), of the Constitution or any of their officers, deputies, assistants, employees, appointees, designees, or representatives.
B. Such public officers shall, by commercial insurance carriers, by self-insurance funds, by joining an interlocal risk management program, or by a combination of any two or more of them, secure general liability insurance coverage on themselves and on their officers, deputies, assistants, employees, appointees, designees, and representatives in amounts of not less than twenty thousand dollars per injured person. Such public officers may secure this insurance coverage themselves or through their respective associations. For purposes of being able to form new interlocal risk management programs or to join existing ones, the office of each such public officer in each parish of the state shall be deemed to be a separate `local governmental subdivion,' and each association of such public officers and each combination of such associations shall be deemed to qualify as an `interlocal risk management agency,' all within the meanings set forth in R.S. 33:1342."
[3] Article VI, Section 5(G) of the State Constitution provides:

"Parish Officials and School Boards Not Affected. No home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law."
[4] Article VI, Section 7(B) of the State Constitution provides:

"Parish Officials and School Boards Not Affected. Nothing in this Section shall affect the powers and functions of a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner."
[5] LSA-R.S. 42:1441.3 provides as follows:

"A. The master of an individual who is an elected or appointed public officer, official, or employee of a political subdivision, under the meaning and purpose of Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant, is the particular political subdivision of which such individual is a public officer, official, or employee.
B. Determinants of which political subdivision may be made liable as master for the offenses and quasi-offenses of a public officer of a political subdivision under Civil Code Article 2320 and other laws imposing such master-servant liability, shall include:
(1) The territorial jurisdiction and territorial extent of the governmental body politic comprising the electorate who usually elects such public officer, if he is elected, or who usually elects the public officer who appoints such public officer, if he is appointed as an assistant, deputy, or other representative or designee of an elected public officer, and comprising the electorate whom such public officer primarily serves; if the office which the public officer holds is in the nature of a representative capacity on a multi-member board, council, commission, jury, or other multimember body which acts as a whole, then the territorial jurisdiction and territorial extent of such multi-member board on which such public officer serves;
(2) The source of the funds used for the operating expenses of the office in which such public officer serves; and
(3) Unless such public officer is elected directly by the electorate of the political subdivision of which he is such officer, the office of the individual who has the right to control closely the daily time and physical activities of such public officer in carrying out his public duties.
C. As provided in R.S. 42:1, the term `public officer' includes anyone who holds any elective or appointive office created by constitution or law. The term is not synonymous with `state officer', as `public officer' includes not only public officers of the state but also public officers of parishes, municipalities, special districts, and other political subdivisions. While all offices created by the constitution or law are `public offices,' they are not all `state offices,' as they include parish offices, municipal offices, district offices, and offices of political subdivisions. A public officer may be the officer of a parish, municipality, district, or other political subdivision without being appointed by or under the direct control of the particular body which exercises the legislative functions of such parish, municipality, district, or political subdivision, in much the same manner as a public officer of the state may hold an office in the executive branch or may hold the office of a state court judgeship without being appointed by or under the direct control of the legislature.
D. Under Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant, the master of justices of the peace, their constables, and other officers elected at the ward level of a parish shall be the parish in which they are elected."
[6] Civil Code Article 2320 provides:

"Masters and employers are answerable for the damages occassioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damages caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."